UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ONEIDA INDIAN NATION,

                          Plaintiff,

    -v-                                    6:05-CV-945

ONEIDA COUNTY,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| MACKENZIE HUGHES LLP<br>Attorneys for Plaintiff<br>101 South Salina Street<br>P.O. Box 4967<br>Syracuse, NY 13221-4967 | PETER D. CARMEN, ESQ. |
| ZUCKERMAN SPAEDER LLP<br>Attorneys for Plaintiff<br>1800 M Street, NW<br>Washington, DC 20036 | MICHAEL R. SMITH, ESQ.<br>WILLIAM W. TAYLOR, III, ESQ. |
| NIXON PEABODY LLP<br>Attorneys for Defendant<br>Clinton Square<br>P.O. Box 31051<br>Rochester, NY 14603-1051 | DAVID M. SCHRAVER, ESQ.<br>G. ROBERT WITMER, JR., ESQ.<br>JOHN J. FIELD, ESQ. |
| HON. ELIOT SPITZER<br>Attorney General for the State of New York<br>Attorney for Amicus State of New York<br>The Capitol<br>Albany, NY 12224-0341 | DAVID B. ROBERTS, ESQ.<br>HOWARD ZWICKEL, ESQ.<br>Ass't Attorneys General |
| DON B. MILLER, P.C.<br>Attorneys for Proposed Intervener Stockbridge-<br>    Munsee Band of Mohican Indians<br>1305 Cedar Avenue<br>Boulder, CO 80304 | DON B. MILLER, ESQ. |

DAVID N. HURD
United States District Judge

# MEMORANDUM-DECISION and ORDER
## and
## PERMANENT INJUNCTION

## I. INTRODUCTION

Plaintiff Oneida Indian Nation ("the Nation") commenced this action on July 27, 2005, seeking declaratory and injunctive relief preventing defendant Oneida County from foreclosing, for non-payment of taxes, property owned by the Nation. On October 28, 2005, a Temporary Restraining Order was issued restraining and enjoining Oneida County from undertaking any further efforts to effectuate, maintain or complete administrative or other foreclosures or to withdraw the right of redemption as to lands possessed by the Nation in Oneida County. On November 2, 2005, a Joint Stipulation was filed by the Nation and Oneida County extending the Temporary Restraining Order and setting forth a timetable for filing and briefing motions.

On November 29, 2005, the Stockbridge-Munsee Band of Mohican Indians ("Stockbridge") filed a motion to intervene. Oneida County did not object. Amicus State of New York ("the State") concurred with the position of Oneida County. The Nation opposes.

In accordance with the stipulation of the parties, the Nation filed a motion for summary judgment. Oneida County opposed and cross-moved for summary judgment. The State filed an amicus brief opposing the Nation's motion and supporting Oneida County's cross-motion.

Oral argument was heard on January 30, 2006, in Utica, New York. Decision was reserved.

## II. **BACKGROUND**

The historical background set forth in the prior decisions regarding Madison County and the City of Sherrill likewise applies here. See Oneida Indian Nation of N.Y. v. City of Sherrill, N.Y., 145 F. Supp. 2d 226, 233-36 (N.D.N.Y. 2001), aff'd, 337 F.3d 139, 146-52 (2d Cir. 2003), vacated & remanded, 544 U.S. 197, 125 S. Ct. 1478 (2005); Oneida Indian Nation of N.Y. v. Madison County, 401 F. Supp. 2d 219, 222-223 (N.D.N.Y. 2005); see also Oneida Indian Nation of N.Y. v. Madison County, 145 F. Supp. 2d 268 (N.D.N.Y. 2001), vacated & remanded, 337 F.3d 139 (2d Cir. 2003). The following undisputed facts are specific to this action.

At issue in this litigation are 280 properties owned by the Nation that are located within Oneida County. Part of the Oneida Indian Reservation, as reserved to the Nation in the 1788 Treaty of Ft. Schuyler and confirmed in the 1794 Treaty of Canandaigua, ("the Reservation") lies within the boundaries of Oneida County. All of the 280 properties at issue here fall within the Reservation. (Thomas Decl. ¶ 8.)[1]

Oneida County follows a tax foreclosure process set forth in Chapter 559 of the Laws of 1902, as amended ("the County Tax Law"). (Yerdon Aff. of Regularity ¶ 3.) Tax bills are distributed to property owners in December, covering taxes for the following year. Id. ¶ 4. The tax bill becomes a lien as of January 1. Id. The taxes are due by January 31. Id. Beginning on February 1, interest and penalties begin to accrue. Id. The tax bill shows

---

[1] Oneida County denies that this fact is material. It also denies that some or all of the properties are within the Reservation, relying upon the failure of the United States Supreme Court to reach the issue of whether the 1838 Treaty of Buffalo Creek disestablished the Reservation and the attempt by Stockbridge to intervene with regard to the six-mile-square property reserved to it. (See Def.'s Resp. to Statement of Undisputed Facts.) However, Oneida County has not made a citation to the record which would establish a dispute as to this fact.

outstanding amounts owed from the previous year in addition to the current year's taxes.  Id. Although not required by the County Tax Law, in February a delinquent notice is sent to each taxpayer whose bill has not been paid.  Id. ¶ 5.

Pursuant to the County Tax Law, whenever a tax remains unpaid for six months, the County Treasurer advertises and sells the parcel.  Id. ¶ 6.  After the expiration of the six months, a notice is published in a local newspaper once a week for six weeks specifying a "tax sale date" on which the tax liens will be sold at tax auction.  Id. ¶ 7.  The County Treasurer then prepares certificates of sale for all parcels purchased.  Id.  Ordinarily the required newspaper notices are published in November and December, after which proof of publication is filed with the Oneida County Clerk.  Id. ¶ 8.  The tax sale is then held on the last business day of December.  Id.  The Commissioner of Finance is authorized to purchase all such liens at the tax sale without offering for public bid.  Id. ¶ 9.

This procedure was followed with regard to each of the Nation's parcels.  Id. ¶ 10. Specifically, unpaid tax bills were levied with penalties and interest, notices of the tax sale were published, proof of publication was filed, Oneida County bid on all parcels at the tax sale, and certificates of sale were created.  Id.

After the date of the sale, the County Tax Law provides that the property may be redeemed "for any real estate taxes sold at any time within one year thereafter by paying the sum of $1.00, plus the principal amount of taxes due, together with statutory penalties and interest."  Id. ¶ 11.  The County Tax Law also provides that not more than three months prior to the expiration of the allowable redemption period (the "Redemption Deadline"), the County Treasurer publishes a weekly notice for three consecutive weeks in a local newspaper.  Id. ¶

23. Proof of publication is then filed. Id. ¶ 13. The notices of redemption are generally published in October. Id. ¶ 14.

Although the Redemption Deadline is one year after the tax sale, Oneida County provides an additional two-year redemption period. Id. ¶ 15. At the end of the three-year period, a Final Notice Before Redemption is prepared. Id. ¶ 18. The Final Notice Before Redemption gives the recipient an additional thirty days within which to redeem the property by tendering payment of the outstanding taxes and penalties owed. Id. The Final Notice Before Redemption is generally transmitted by certified mail to all interested parties. Id. At the expiration of the thirty-day allowable redemption period, the County Treasurer executes and delivers a conveyance of the parcel to the certificate holder, in this case, Oneida County. Id. ¶ 23.

On June 3, 2005, the Deputy Commissioner of Finance personally delivered Final Notices Before Redemption (dated June 1, 2005) to the Nation, with regard to 59 parcels. Id. ¶ 19. The notices stated that the redemption period ended on July 29, 2005. Deeds were executed on June 17, 2005, purportedly conveying the properties to the Oneida County Board of Legislators to be held in trust for the County. This action was then commenced by the Nation seeking to prevent Oneida County from pursuing foreclosure and conveyance of Nation lands. On August 1, 2005, the parties reached an agreement pursuant to which the Nation remitted $650,000.00 to Oneida County, in exchange for extension of the redemption period for the 59 parcels[2] through the completion of this litigation. (Carvelli Aff. Ex. A.)

---

[2] At some point the Nation redeemed six of these parcels.

On September 26, 2005, the Deputy Commissioner of Finance for Oneida County delivered additional Final Notices Before Redemption to the Nation covering 62 parcels. These notices, dated September 21, 2005, set a final redemption date of October 29, 2005. Again on October 27, 2005, Final Notices Before Redemption covering 66 parcels were delivered to the Nation. (Yerdon Aff. of Regularity ¶ 20.) As noted above, on October 28, 2005, the Nation sought and obtained a restraining order preventing further foreclosure efforts, which continues in effect by stipulation of the parties.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient

evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV. DISCUSSION

### A. Summary Judgment

The parties propound four bases upon which each argues it is entitled to summary judgment regarding foreclosure. There also are contrary arguments regarding the propriety of imposing penalties and interest. Each will be discussed seriatim.

#### 1. Nonintercourse Act, 25 U.S.C. § 177

The "Nonintercourse Act restricts the alienation of Indian land without Congressional approval." Madison County, 401 F. Supp. 2d. at 228 (citing Sherrill, 125 S. Ct. at 1484 & n. 2). The reasoning set forth in the Madison County case, id. at 227-28, applies here as well.[3] Accordingly, the Nonintercourse Act precludes Oneida County from foreclosing upon the parcels at issue here (the Nation's land) and summary judgment will be granted to the Nation.

#### 2. Tribal Sovereign Immunity

The Nation is a federally recognized Indian Tribe which has not waived its sovereign immunity with regard to its real property. Further, Congress has not abrogated that immunity with regard to the Nation's real property. The reasoning in the Madison County case, id. at 228-30, also applies with regard to properties located in Oneida County. Thus,

---

[3] Oneida County's argument that the Madison County decision is inapposite here because it was wrongly decided is not well taken. Determining the correctness of that decision now lies within the purview of the Second Circuit.

sovereign immunity bars any suit against the Nation, including one to foreclose upon its property.

### 3. Due Process

The Nation argues it was not provided due process in the notification procedure regarding redemption followed by Oneida County. It contends that less than two months notice (from the date the Final Notices Before Redemption were served upon it until the end of the redemption period) failed to comport with due process although this notice procedure was apparently in compliance with the County Tax Law. In fact, according to Oneida County, the only notice of the redemption period, prior to the Final Notice Before Redemption, was by publication in a local newspaper. The Nation contends that notice of the redemption deadline must have been served upon it at the beginning of the redemption period in order to provide the process that was due. Oneida County argues to the contrary that as long as it complied with the notice requirements of the County Tax Law, due process is provided.

It is a requirement of due process that a property owner be properly notified of a tax sale and redemption period. City of Sherrill, 145 F. Supp. 2d at 257 (citing McCann v. Scaduto, 71 N.Y.2d 164, 176 (N.Y. Ct. App. 1987); Yagan v. Bernardi, 256 A.D.2d 1225, 1226 (N.Y. App. Div. 4th Dep't 1998)). In McCann, the applicable county code provided that a tax lien resulted from unpaid taxes, and that a date for the sale of the tax liens be set. 71 N.Y.2d at 170. Notice of the tax lien sale date was by publication. Id. A two-year redemption period followed the tax lien sale. Id. Additional notices by publication were required. Id. If the tax lien was not redeemed within twenty-one months, the tax lien purchaser was required to serve upon the owner and other specified parties, by certified mail return receipt requested, a notice to redeem within three months. Id. at 171. The Court of

Appeals of New York found that this statutory scheme failed to provide due process because owners had not been given actual notice of the tax lien sale and redemption period. Id. at 177. Specifically, the McCann Court found that actual notice three months prior to the end of the redemption period was insufficient. Id. Rather, the court determined, in line with the legislatively-designed redemption period, that actual notice of the tax lien sale must be given. Id.

Here Oneida County applies a three-year redemption period to all tax liens. However, only notice by publication is provided regarding the tax lien sale and redemption period. Oneida County does not provide actual notice to the landowner until thirty days prior to the end of the redemption period. This mechanism is strikingly similar to the one held unconstitutional in McCann. See 71 N.Y.2d at 177-78. The major difference is that here actual notice is given thirty days prior to the end of the redemption period, whereas in McCann actual notice was given three months before the redemption period ended. Accordingly, Oneida County's mechanism under the County Tax Law fails to provide due process. Failure to provide actual notice to the Nation of the tax lien sale and the redemption period, at the beginning of the redemption period, violates the Nation's right to due process and it is entitled to summary judgment on this basis.

### 4. State Law

The Nation contends that its real property within the Reservation is not taxable pursuant to N.Y. Real Prop. Law § 454 and N.Y. Indian Law § 6. Oneida County argues that abstention should apply with regard to issues of state tax law. As with the discussion regarding the Nonintercourse Act, the parties' arguments with regard to state law mirror those arguments made in the Madison County case. Thus, the reasoning set forth there applies

here, see 401 F. Supp. 2d at 231, and repetition is unnecessary.  Similarly, the previous analysis applies to Oneida County's argument regarding abstention.  See id. at 224-25. Oneida County is not entitled to summary judgment based upon abstention, and the Nation is entitled to summary judgment based upon state law.

### 5. Penalties and Interest

Oneida County argues that penalties and interest may be levied on the subject parcels, relying upon the Sherrill holding that there is no immunity from taxes.  See 125 S. Ct. at 1489-90.  Oneida County also relies upon the fact that it followed state law in assessing the interest and penalties.  The Nation argues that equitable principals must be applied to preclude assessment of penalties and interest for nonpayment of taxes for the period prior to the Sherrill decision of March 29, 2005, when taxes were not known to be due.[4]

During the time period in which Oneida County assessed penalties and interest it was the law in this Circuit that these parcels were tax exempt.  See City of Sherrill, N.Y., 145 F. Supp. 2d at 266 (holding that Nation-owned property within the Reservation is non-taxable); 337 F.3d at 167 (affirming the lower court holding regarding non-taxability of Nation land).  It would be inequitable to permit Oneida County to assess interest and penalties for non-payment of taxes during a time when it was the law that the lands were not taxable.  See Hecht v. Gertler, 204 A.D.2d 322, 323-24 (N.Y. App. Div. 2d Dep't 1994) (modifying a lower court order that retroactively assessed penalties); LaFayette Cent. Sch. Dist. v. Niagara Mohawk Power Corp., 129 A.D.2d 989, 989-90 (N.Y. App. Div. 4th Dep't 1987) (modifying a

---

[4] The Nation also urges that equity requires that the monies it gave to localities in Silver Covenant Chain Grants during the period prior to the Sherrill decision be used to set off any tax assessments.  However, the amount of taxes due is not at issue in this action.  Accordingly, the issue regarding Silver Covenant Chain Grants will not be reached.

lower court order imposing interest on taxes accrued when an exemption from such taxes was in effect, although the exemption was later found to have been improper).  It is also notable that Oneida County cites no authority for the proposition that interest and penalties may be imposed for non-payment of taxes that were only later found to have been due at the earlier time.  Accordingly, equity precludes the imposition of interest and penalties for the period prior to March 29, 2005, and the Nation is entitled to summary judgment on this basis.

### B. Declaratory and Injunctive Relief

Again, the previous analysis balancing benefit and harm applies here, see id. at 231-32, weighing in favor of granting the Nation declaratory and injunctive relief.  Oneida County argues that it will be irreparably harmed by the Nation's "accelerating number of properties acquired" and their refusal to pay taxes owed.  (Def.'s Mem. at 21.)  It also contends that a checkerboard of jurisdiction is contrary to the public interest.  As was previously noted in the Madison County case, Oneida County must find an alternative method, other than foreclosure, to obtain the taxes owed.  See 401 F. Supp. 2d at 232.  Moreover, the question of a jurisdictional checkerboard is to be resolved in the Nation's pending land trust application.  The Nation is entitled to declaratory and injunctive relief.

### C. Motion to Intervene

Stockbridge moves to intervene pursuant to Fed. R. Civ. P. 24(a).  The purpose of Stockbridge's proposed intervention is solely to obtain dismissal of this action to the extent any parcels at issue here overlap with its (purported) six-mile-square reservation.  (Stockbridge Mem. at 3.)

Pursuant to Rule 24(a) intervention as of right is appropriate, upon a timely application, when a federal statute "confers an unconditional right to intervene" or if the

proposed intervener "claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Id.

As noted, Stockbridge's asserted interest in this action is to obtain dismissal of any claim related to parcels that are within its claimed reservation. However, it specifically reserves its sovereign immunity with regard to any claim to the six-mile-square reservation land. Thus, if Stockbridge was permitted to intervene and dismissal of the desired claims was granted, Oneida County would proceed with its foreclosure action and divest the Nation of title to the applicable parcels. However, the Nation is precluded from making any claim to the six-mile-square reservation land because of Stockbridge's sovereign immunity. This anomalous result demonstrates Stockbridge's lack of interest in this litigation. If it obtained the relief it seeks--dismissal of claims regarding parcels within the six-mile-square area--only the Nation's and Oneida County's interests would be affected. In fact, Stockbridge recognizes that its purported ownership interest in the six-mile-square area is being litigated in the land claim action also currently pending. (Stockbridge Mem. at 2 (referencing Civil Action No. 86-CV-1140).) Accordingly, Stockbridge does not qualify to intervene pursuant to Fed. R. Civ. P. 24(a), and its motion to do so will be denied.

## V. **CONCLUSION**

The remedy of foreclosure is not available to Oneida County pursuant to the Nonintercourse Act, 25 U.S.C. § 177, N.Y. Real Prop. Law § 454, and N.Y. Indian Law § 6. Notification by mail to the Nation of the end of the redemption period less than two months before its expiration failed to provide the Nation the process it was due; therefore, Oneida

County cannot proceed with the foreclosures.  Tribal sovereign immunity also insulates the Nation from any foreclosure action.  Equity precludes the imposition of penalties and interest for taxes unpaid during a time when the properties were tax-exempt under the law.  The Nation is entitled to the declaratory and injunctive relief it seeks.  Finally, Stockbridge has no interest in this action and therefore is not entitled to intervene as of right.

In conclusion, it would be wise for all sides to ponder the words of President Abraham Lincoln in his annual message to Congress on December 1, 1862.  The words still ring true today.

> Fellow citizens, we cannot escape history.  We . . . will be remembered in spite of ourselves.  No personal significance, or insignificance can spare one or another of us.  The . . . trial through which we pass, will light us down, in honor or dishonor, to the latest generation. . . .
>
> The dogmas of the quiet past, are inadequate to the . . . present. . . .  We must think anew, and act anew.  We must disenthrall ourselves.

If the last words are heeded, and the parties resolve the many land claim issues with good will and friendship between nations, the citizens of this time and place will be remembered by future generations with admiration and gratitude.  In the alternative, future generations will still be coping with an endless stream of federal and state lawsuits, land claims, and land trust applications.

Accordingly, it is

ORDERED that

1. The Oneida Indian Nation's motion for summary judgment is GRANTED;

2. Oneida County's cross-motion for summary judgment is DENIED;

3. The motion by the Stockbridge-Munsee Band of Mohican Indians to intervene is DENIED;

      4. Oneida County is permanently enjoined from any attempt to foreclose on Oneida Indian Nation property or in any other way alter title to Oneida Indian Nation property;

      5. Oneida County is permanently enjoined from assessing and/or collecting penalties and interest on unpaid taxes prior to March 29, 2005, against the Oneida Indian Nation; and

      6. Oneida Indian Nation's reservation was not disestablished.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: June 2, 2006

      Utica, New York.